STATE of Maine

v.

Forrest S. GREENWOOD.

Supreme Judicial Court of Maine.

May 5, 1978.

Charles K. Leadbetter, Asst. Atty. Gen. (orally), Augusta, Thomas E. Delahanty, II, Dist. Atty., Auburn, for plaintiff.

Marshall, Raymond, Beliveau, Dionne & Bonneau by Paul R. Dionne (orally), Lewiston, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

PER CURIAM.

The Defendant, Forrest S. Greenwood, was tried in Superior Court in Androscoggin County on an indictment charging three counts of aggravated assault[1] and one count of terrorizing with a firearm.[2] The jury acquitted him on the aggravated assault charges, but returned a guilty verdict on Count IV, which was the terrorizing count. He appeals from the judgment of conviction on that count which was entered on the verdict, assigning as errors the manner of interrogation of a witness by the presiding justice, and the alleged violation of a sequestration order by some of the witnesses.

Finding merit in the former point, we sustain the appeal and remand for a new trial.[3]

Here credibility was the key to the outcome of the trial. The stories of the Defendant's subsequently divorced wife, his brother-in-law, and his teen-age daughters were aligned against the Defendant's own recollection of the events.

Although the Defendant's son, Forrest (Sonny) Greenwood, was called to testify by the State, his testimony was of critical im-

---

1. 17–A M.R.S.A. § 208.

2. 17–A M.R.S.A. § 210, elevated to a Class B offense, with mandatory prison sentence, by the provisions of 17–A M.R.S.A. § 1252.

3. This Court's opinion in State v. Porter, Me., 384 A.2d 429 (1978) is dispositive on the issue raised sua sponte by the Court relative to the sufficiency of the indictment to charge terrorizing.

portance because he alone among these several witnesses tended to support his father's version of the events.[4]

Nevertheless, after counsel had completed examination and cross-examination of Sonny, the presiding justice *sua sponte* launched his own examination of the young man, which extended to twenty-nine questions. Objection by Defendant's counsel came during this questioning, and under M.R.Evid. 614(c) his objection was sufficient to preserve the point for appellate review. Compare *State v. Haycock,* Me., 296 A.2d 489, 492 (1972).

When Defendant's counsel attempted to state the grounds of his objection, he was interrupted by the presiding justice, who stated that counsel's objection might be noted and declared:

> I think the Court is entitled to know. The jury is entitled to know what went on out there. We have a difference of testimony here and we'd like to know what the truth is what happened.

The presiding justice then resumed his questioning of the young man.

Significantly not one of the four witnesses who related a different version of the facts, and a version extremely damaging to the Defendant, was subjected to any questioning whatsoever by the presiding justice.

■ The right of a trial judge to interrogate witnesses appearing before him is expressly granted by our rules. M.R.Evid. 614(b). So long as the trial judge intervenes for the purpose of clarifying testimony, saving time, or preventing a miscarriage of justice, he must be allowed considerable latitude in his questioning. Field & Murray, *Maine Evidence* § 614.2 (1976).

The issue presented by the instant case, however, is whether this trial judge's pro-

tracted interrogation of this one witness went so far as to suggest to the jury that he had aligned himself on the side of one of the contestants, notwithstanding his disavowal of such alignment while he was instructing the jury. *State v. Hunnewell,* Me., 334 A.2d 510, 512–513 (1975).

■ While this issue must be resolved in the light of the facts of the particular case, we reach the same result here as we reached in *State v. Lint,* where it was concluded that the justice's examination of a defendant's sole supporting witness was a serious injustice to that defendant. Me., 361 A.2d 926, 927 (1976).

Our review of the record in the instant case leads us to conclude the court below erred in singling out this one witness for extended examination. His twenty-nine questions were, for the most part, leading, and were occasionally argumentative. At best these questions were only marginally helpful in ascertaining the facts. Moreover, when the objection to such questioning was interposed, the justice's response that "we'd like to know what the truth is" could suggest to the jury that they had heard something other than the truth in this witness' prior testimony.

In sum, the jury could infer that the presiding justice had retreated from a position of judicial impartiality.

The crucial nature of the credibility of this witness, the potential effect on the jury of this one witness being singled out, and the cross-examination style of the questioning by the presiding justice lead us to further conclude that the cautionary instruction which he later gave the jury was insufficient to remedy the error.

■ As we cautioned in *Haycock,* a trial judge should not assume the posture of an

---

**4.** The other prosecution witnesses testified that the Defendant pointed a loaded shotgun at his brother-in-law and said that he was going to "shoot the turkey off the tailgate" of his truck. In contrast, the Defendant and Sonny testified that the gun was unloaded, and that the De-

fendant stated that he was going to "shoot the tires off the truck," so that certain items could not be removed from the marital home. The aggravated assault charges stemmed from a struggle for the gun immediately thereafter.

advocate. Me., 296 A.2d 489, 492 (1972). When both parties are represented by experienced counsel, it is seldom, if ever, necessary for the presiding justice to question a witness in a manner that may be taken by the jury to cast doubt on the credibility of that witness, or to an extent that the jury may infer that the presiding justice has retreated from a position of complete impartiality.

The entry will be:

Appeal sustained.

. Remanded for a new trial on Count IV of the indictment.

POMEROY and DELAHANTY, JJ., did not sit.